**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

| | | |
|---|---|---|
| **JOHN SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | 3:18-CV-210-MPM-RP |
| **O'REILLY AUTOMOTIVE** | ) | |
| **STORES INC.** | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, John Smith, ("hereinafter Plaintiff") through his undersigned counsel and files his Complaint under Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12181 et seq for declaratory and injunctive relief.

### JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. This is an action for declaratory and injunctive relief pursuant to Title III of the ADA and its implementing regulations, and this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Northern District of Mississippi.

3. Plaintiff, John Smith was diagnosed with diabetes forty-one years ago. As a result of his diabetes, Mr. Smith consequently had a double amputation, losing both of his legs. Mr. Smith requires a wheelchair for mobility as a result of these amputations. The extent of Mr. Smith's physical problems limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and

work, all of which are major life activities pursuant to 42 U.S.C. § 12102 (2)(A). Mr. Smith, is accordingly, disabled pursuant to the Americans with Disabilities Act, in that he suffers a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102.

4.  Defendant, O'Reilly Automotive Stores Inc., (hereinafter "O'Reilly"), is a corporation that is both registered to conduct business and is conducting business within the State of Mississippi sufficient to create both general and specific in personam jurisdiction. Upon information and belief from the property records on the DeSoto County Geographical Information System, O'Reilly Automotive Inc., "owns" the real property and its improvements located at 6155 Goodman Road, Olive Branch, MS 38654 and "operates" the place of public accommodation more commonly known as O'Reilly's. 42 U.S.C. § 12182. The auto parts store is a commercial facility in that the facility is intended for nonresidential use and affects commerce. 42 U.S.C. § 12181(2)((A). Pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, the Defendant's establishment is a place of public accommodation in that it is a auto parts store providing automotive parts and accessories to the public. Accordingly, it is covered by the ADA and must comply with the Act.

5.  All events giving rise to this lawsuit occurred in the Northern District of Mississippi.

6.  Plaintiff John Smith travels from his home in Muscle Shoals, Alabama to Olive Branch, Mississippi at least once a year and usually more often than that. Mr. Smith enjoys going to Olive Branch because he likes the city. Mr.

Smith is something of a creature of habit and likes to go to certain places on a path he is familiar with. Mr. Smith likes to shop at O'Reilly's because of its broad selection of automotive products. Mr. Smith intends to continue patronizing O'Reilly because he wants to enjoy the pleasant in-store experience that O'Reilly's claims to offer non-disabled individuals by maintaining attractive stores in convenient locations with a wide selection of automotive products that are equipped with a robust point-of-sale system integrated with O'Reilly's proprietary electronic catalog that contains a wide variety of product images, schematics and technical specifications. He will return not only to shop, but also to confirm compliance with the ADA by the Defendants. Mr. Smith does not know exactly when he will go back to O'Reilly, because he has not planned out every trip for the rest of his life. Such specific planning is not necessary to invoke the ADA. Mr. Smith definitely intends to return to O'Reilly in the near future. He will continue to shop there when it has been made ADA compliant.

7. Because of the barriers described herein, Plaintiff has been denied full and equal enjoyment of the Defendant's premises on the basis of his disabilities.

8. Plaintiff accordingly, has Article III standing to pursue this case because (1) he is a person with a disability, pursuant to the statutory and regulatory definition; (2) the Defendant's auto parts store is a place of public accommodation, pursuant to the statutory and regulatory definition; (3) he has suffered a concrete and particularized injury by being denied access to the establishment by architectural barriers, by being denied access by the

Defendant's practices described herein, and by Defendant's denial of the use of the auto parts store for his full and equal enjoyment as compared to people without disabilities. and (4) Furthermore, due to these injuries, there exists a genuine threat of imminent future injury as long as the barriers described remain at the facility.

## COUNT ONE
*(Architectural Barriers)*
***Failure to Design and Construct According to ADA Standards***

9.   Plaintiff incorporates by reference and realleges all the paragraphs above.

10.  Defendant has failed to design and construct this auto parts store in accordance with the ADA standards as required and has failed to bring the auto parts store into compliance with the applicable ADA Standards when the facility was subsequently altered.

11.  In enacting the ADA, Congress found, among other things that Persons with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. §12101(A)(5).

12.  In response to these findings, Congress explicitly stated that the purpose of the ADA was to:

**A.** Provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

**B.** Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

**C.** Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities. 42 U.S.C. § 12101(b)(1)(2) and (4).

13. The ADA provides that facilities constructed prior to January 26, 1992, are considered an "existing" "facility, and, therefore, those facilities must remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). All "alterations" made to existing facilities after January 26, 1992, and all "new construction" after January 26, 1993, were required to be *readily accessible to and usable by individuals with disabilities*, including *individuals who use wheelchairs*. 42 U.S.C. § 12183(a) and (b). 28 *C.F.R.* § 36.402. "Readily accessible to and usable by. . ." was and is the "new construction" standard, which requires compliance with the Department of Justice standards. 42 U.S.C. § 12183(a)(1); 28 *C.F.R.* § 36.406. The only defense for a covered entity failing to strictly comply with the ADA "new construction Standards" is if the design and construction of the building is "structurally impracticable". 42 U.S.C. § 12183(a)(1). The "structural impracticability" defense applies only in rare circumstances of extraordinary terrain. 28 *C.F.R.* § 36.401(c). "Readily accessible to and usable by. . ." is also

the "alterations" standard. 42 U.S.C. § 12183(a)(2). "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

14. "Alterations" must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 *C.F.R.* § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 *C.F.R.* § 36.402(b).

15. New construction and alterations must comply with either the Justice Department's 1991 Standards for Accessible Design, or the 2010 Standards for Accessible Design. 28 *C.F.R.* § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 *C.F.R.* § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after September 15, 2010, and before

March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 *C.F.R.* § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. *Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable.* See 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

16. Plaintiff is informed and believes based on publicly available information that the interior build out of the auto parts store was first constructed in 2006.

17. Plaintiff is further informed and believes based on publicly available information that the auto parts store has undergone alterations and/or improvements after 2006.

18. The following is a specific, although not exclusive, list of unlawful physical barriers, dangerous conditions and ADA violations which preclude or limit Plaintiff's ability (because of his disabilities) to access the Property and/or fully and equally enjoy the goods, services, facilities, privileges, advantages

and/or accommodations offered in the facility. The citations are to the ADA 2010 Standards, because the 2010 Standards are applicable to modifications made after March 15, 2012. 28 C.F.R. § 36.406(5)(ii).

**A.** Defendant fails to maintain an accessible route throughout the interior aisles of the store, which includes maintaining At least one accessible route that connects the facility entrance with all accessible spaces and elements within the facility which are connected by a circulation path. §206.2.4;

**B.** Defendant fails to maintain the self-service merchandise displays on an accessible route located within the store. §402 and §225.2;

**C.** Defendant fails to maintain the accessible route among the merchandise aisles in operable condition which results in rendering the required clear floor path unusable by individuals with disabilities because the display tables, standing racks, and other items obstruct the clear floor space. §403.5.1;

**D.** Defendant fails to maintain the accessible route throughout the store aisles which includes maintaining the accessible route's clear width at turns and/or passing spaces. This has the discriminatory effect of rendering the shopping aisles containing goods as unusable by people with disabilities. §403.5.2 and §403.5.3;

**E.** There is not at least one of each type of sales and/or service counter which is maintained in operable condition in violation of the ADA Standards so that a portion of the counter surface measuring a

minimum length of 36 inches and a maximum height of 36 inches above the finish floor is usable by individuals with disabilities. This includes maintaining a clear floor or ground space complying with §305.5 positioned for either a parallel or side approach adjacent to the 36-inch minimum length of counter to include the required knee and toe clearance. §306 and §904.4;

F. Defendant has failed to maintain the surface of the sales counter so that it is free from obstructions, which has a discriminatory effect on individuals with disabilities attempting to use the counter;

G. Defendant provides a sales counter and service counter for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

(1) There is not at least at least one of each type of sales counter and service counter that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the counter, its associated elements, and services as unusable by disabled individuals. §227.3;

(2) There is not at least at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible counter is located adjacent to a walking surface complying with §403;

(3) There is not at least at least one of each type of sales counter and service counter that is maintained in operable condition by conforming with the ADA Standards for Accessible Design so that the A portion of the counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor is usable by disabled individuals which includes maintaining a clear floor or ground space complying with 305 positioned for either a parallel approach adjacent to the 36 inch minimum length of counter, or, alternatively, A portion of the counter surface that is 30 inches long minimum and 36 inches high maximum with Knee and toe space complying with 306 provided under the counter and a clear floor or ground space complying with 305 positioned for a forward approach to the counter. §904.4;

(4) There is not at least at least one of each type of sales counter and service counter that is maintained in operable condition with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining the

clear counter surface free of obstructions which has the discriminatory effects of rendering the counter and its associated benefits and services and unusable by the disabled;

**H.** Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

**(1)** Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to parking spaces failing to be located on the accessible route to the entrance which has the discriminatory effects of rendering the parking spaces and its associated elements as unusable by disabled individuals. §36.302; §208.3.1; §502.1;

**(2)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so

that the level parking spaces measure 96 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum and connect to an accessible route to the entrance of the establishment. §502.2; §502.3;

**(3)** The parking area fails to maintain the required amount of parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled. §502.3.1; §502.3.2; §502.3.3;

**(4)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way. §502.3.4;

**(5)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign. §502.6;

**(6)** The parking area fails to maintain the required amount of parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled. §502.7;

**I.** Defendant provides a parking area with parking spaces that have routes connecting the parking spaces to the entrance of the establishment for able-bodied individuals, but fails to provide that same level of access by providing an ADA accessible route from the accessible van parking spaces to the accessible entrance for non-able-bodied individual which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation which includes but is not limited to the following failures of Defendant:

**(1)** Defendant fails to maintain the parking area and its associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which includes but is not limited to van parking spaces failing to be located on the accessible route to the entrance which has the discriminatory

effects of rendering the parking spaces and its associated elements as unusable by disabled individuals. §208.2.4; §208.3.1; §502.1;

**(2)** The parking area fails to maintain the required amount of accessible van accessible parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking space measures 132 inches wide minimum with an adjoining compliant access aisle that measures 60 inches wide minimum, or alternatively a 96 inch wide space with an adjoining 96 inch wide access aisle, and connects to an adjoining accessible route to the entrance of the establishment. §502.2; §502.3;

**(3)** The parking area fails to maintain the required amount of accessible van parking spaces, including its associated access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces adjacent access aisle extends the full length of the parking space and is marked so as to discourage parking in the access aisle which renders it unusable by the disabled. §502.3.1; §502.3.2; §502.3.3;

**(4)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces adjacent access aisles do not overlap the vehicular way. §502.3.4;

**(5)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces are identified with signage including the international symbol of accessibility that is mounted 60 inches minimum above the finished floor or ground surface measured to the bottom of the sign. §502.6;

**(6)** The parking area fails to maintain the required amount of accessible van parking spaces, including its adjoining access aisle, in operable condition by conforming with the ADA Standards for Accessible Design so that the parking spaces and its adjacent access aisles are designed or otherwise maintained in a way so that when cars and vans, when parked, cannot obstruct the required clear width of adjacent accessible routes and render the parking space as unusable by the disabled. §502.7;

**J.** Defendant provides a toilet room for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to other individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**(1)** When entering and/or exiting the restroom there is insufficient maneuvering clear floor space for individuals who require

mobility devices to approach the door to pull it open and/or maneuver into the toilet room. §404.2.4;

**(2)** Defendant maintains a plethora of items in the maneuvering clearance at the toilet room door which has the discriminatory effect in practice of prohibiting disabled individuals from the full and equal opportunity to maneuver independently throughout the toilet room. §36.211; §36.302;

**(3)** The toilet room door operating hardware fails to be maintained in conformance with the ADA Standards for Accessible Design so that the hardware does not require tight grasping, twisting, and/or pinching of the wrist. §309.4;

**(4)** The toilet room fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effects of rendering the water closet and its associated elements as unusable by disabled individuals. §213.3.2;

**(5)** The clear floor space around the water closet fails to be maintained in conformance with the ADA Standards for Accessible Design so that the lavatory sink and/or other associated obstructions are not restricting the water closets usability by disabled individuals. §604.3.1;

**(6)** The toilet paper dispenser fails to be properly maintained in conformance with the ADA Standards for Accessible Design so that the dispenser is located 7-9 inches from the front of the water closet. §604.7;

**(7)** The side wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 42 inch long grab bar that is located a maximum of 12 inches from the rear wall and extending a maximum distance of 54 inches from the rear wall, with the top gripping surface of the grab 33-36 inches above the finished floor. §604.5.1; §609.3;

**(8)** The rear wall grab bar fails to conform to the ADA Standards for Accessible Design in all the ways that it is required to be readily accessible to and usable by disabled individuals which includes but is not limited to maintaining a 36 inch long grab bar installed so that it is located 12 inches on the closed side of the toilet room and 24 inches on the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor. §604.5.2; §609.3;

**(9)** Defendant fails to maintain the accessible features of the restroom that are required to be readily accessible to and usable by individuals with disabilities. §36.211;

**K.** Defendant provides a lavatory for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that experience afforded to individuals without disabilities, which includes but is not limited to the following failures of Defendant:

**(1)** The lavatory fails to be maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals which has the discriminatory effect of rendering the lavatory sink and its associated elements as unusable by the disabled. §213.3.4;

**(2)** There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach. §606.3;

**(3)** The clear floor space at the lavatory sink fails to be maintained in conformance with the ADA Standards for Accessible Design so that the knee and toe clearance is not restricting the usability by disabled individuals. §606.2;

**(4)** The paper towel dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or

pinching of the wrist or otherwise restrict the continuous flow of paper. §308.1; §309.4;

**(5)** The soap dispenser fails to be maintained in a usable condition so that the dispenser and its operable parts measure the required height for unobstructed and/or obstructed reach ranges and do not require the use of tight grasping, twisting, and/or pinching of the wrist or otherwise restrict the continuous flow of paper. §308.1; §309.4;

**(6)** There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor. §308.1;

**(7)** There is not at least one lavatory with a soap dispenser that is maintained in a usable condition so that the dispenser does not require the use of two hands to operate and/or require tight grasping, twisting, and/or pinching of the wrist. §308.1; §309.4.

19. The above listing is not intended to be an all-inclusive list of the barriers, conditions and violations of the ADA encountered by Plaintiff and existing at the Property. Although, the above listing, in and of itself, denied and still denies Plaintiff, due to his disabilities, and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations offered at the Property in violation of the ADA. Plaintiff requires full and complete inspection of the Property, with full access thereto, in order to determine all

of the Defendant's discriminatory acts violating the ADA relevant to Plaintiff's disabilities.

20.     Plaintiff believes that violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the Statute.

21.     Failure of the Defendant to "design and construct" and alter this facility in compliance with the ADA's New construction standards is a direct violation of the statute, and more specifically, has a discriminatory impact on Plaintiff and all persons similarly situated.

## COUNT TWO
*Failure to modify policies, practices, and procedures which deny equal access to benefits and services*
**(42 U.S.C. § 12182(b)(2)(A)(ii))**

22.     Plaintiff incorporates by reference and realleges all the paragraphs above.

23.     The ADA, Title III, specifically makes it unlawful to provide individuals with disabilities with an "unequal benefit," and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A))(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, persons with disabilities must receive equal benefits as compared to the benefits received by persons without disabilities. Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who

use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." See 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

24.     ADA, Title III requires a public accommodation to provide individuals with disabilities *more than simple physical access.* Creating unlawful architectural barriers by failure to design, construct and alter the facility in accordance with the ADA Standards as set forth in Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

25.     For this reason, the Act applies not only to barriers to physical access to places of public accommodation, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and

equal enjoyment of the privileges and services offered by the public accommodation. 42 U.S.C. § 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest Prod., Ltd.* 294 F.3d 1279, (11th Cir. 2002) that:

> "A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both *tangible barriers* (emphasis added), that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and *intangible barriers* (emphasis added), such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges."

26. Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes: "*a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.*"

27. Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, full and equal access to goods or services to persons with disabilities.

28. Defendant either has no policies, practices, and procedures to remove architectural barriers or else does not abide by them. The architectural barriers identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

29. Defendant's obvious disregard for compliance with the ADA's alteration standards reflects, at a minimum, a policy which excludes persons with disabilities in the planning and implementation of alterations of the facility. Renovation of the facility afforded Defendant a post-construction opportunity to bring the auto parts store into compliance with the ADA Standards, but Defendant's policies and practices of non-compliance with the ADA's alteration standards effectively ensure that persons with disabilities continue to have unequal access to the services and accommodations offered.

30. Defendant's practices at the auto parts store literally create barriers and in so doing deny Plaintiff the full and equal enjoyment of the establishment. Those practices include but are not limited to:

    **A.** Defendants fail to provide an accessible route that connects to an accessible entrance to all the spaces, elements, and associated elements that are required to be readily accessible to and usable by disabled individuals, so that Plaintiff is entirely prohibited or otherwise limited from accessing each and every space and element of the establishment, and is therefore prohibited from enjoying the same benefits and

experiences in the same way as the non-disabled get to enjoy and access the establishment;

**B.** Defendants fail to provide ADA accessible curb ramps that are accessible and usable by individuals with disabilities including individuals who require the use of mobility chairs and in doing so have the discriminatory effects in practice of outright segregating disabled individuals to the status of a second-class citizen;

**C.** Defendants' failure to clearly mark and designate ADA accessible parking spaces has a discriminatory effect in practice that excludes or otherwise segregates disabled individuals from being on the shortest accessible route to the entrance so that Defendants might as well set up a triage to assist the disabled after they attempt to maneuver through the utterly non-compliant parking lot while attempting to dodge vehicles on the inaccessible route that leaves them to struggle to open and maneuver into the doorway;

**D.** Defendants fail to provide ADA accessible parking with connecting accessible routes to the entrance of the auto parts store from the parking lot, which means that Mr. Smith is forced to depend on assistance from a third party to get into the auto parts store, whereas non-disabled conveniently access the establishment from the parking lot without the need of assistance;

**E.** Defendants make their entire omni-channel shopping experience inaccessible for use by disabled individuals by failing to provide any level of accessibility whatsoever so that disabled individuals are outright excluded from that same opportunity that non-disabled individuals have at O'Reilly;

**F.** Defendants fail to provide maneuvering clearance and clear floor space in almost every way possible so that Plaintiff cannot travel and move throughout the establishment on the same paths of travel that the non-disabled people use;

**G.** Defendants fail to provide an accessible restroom to Plaintiff and other disabled individuals, so that Mr. Smith cannot relieve himself or move into and throughout the restroom, which the able-bodied can freely do;

**H.** Defendants make the toilet facilities inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the restrooms so that Plaintiff is denied the opportunity to independently use the restroom, or clean up, or move into and throughout the restroom, whereas non-disabled individuals are able to independently use the restroom;

**I.** Defendants make the check-out counter in the store area inaccessible for use by the disabled by failing to provide either a parallel or a forward approach to the counter, which means Mr. Smith cannot fully

and equally use the counter to check out in the way the non-disabled do, because the non-disabled have a counter they can use to check out;

**J.** Point of sale machines at the check-out counter in the store area are located so as to be inaccessible, which denies Mr. Smith the ability to equally use those machines as the non-disabled, who can independently use the point of sale machines to pay for their purchases, though he cannot;

**K.** Defendants use the accessible counter surfaces at the counter in the store area as a sales area, so that Mr. Smith does not have a counter surface to use, unlike the able-bodied who do have usable counter surfaces;

**L.** Defendants according to their own annual SEC filings, have a systemic companywide practice to continually enhance and update the O'Reilly's store design which includes but is not limited too features to optimize square footage, high ceilings, convenient interior store layouts, in-store signage, bright lighting, convenient ingress and egress and parking, dedicated counters to serve professional service provider customers and among other enhancements. Yet, Defendants systematic companywide practice of how it chooses to design its retail stores utterly fails to incorporate ADA Accessibility into its practices so that Plaintiff and other similarly situated individuals receive the same "pleasant in-store experience" that O'Reilly's claims it offers to the public.

31.    Defendants' policies, practices, and procedures are conducted without regard to disabled individuals;

32.    As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant either has no policies, practices, or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is effective and permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

33.    To date, the Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations.

34.    Defendant "owns" and "operates" or "leases" the auto parts store which is the subject of this action and is therefore, pursuant to 42 U.S.C. § 12182, responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

35.    Plaintiff, hereby, provides sufficient notice of his demands for a modification of Defendant's policies, practices, and procedures.

36.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

37.  Pursuant to 42 U.S.C. § 12188 this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
*Plaintiff has been denied Full and Equal Enjoyment of the*
*goods, services and facilities of the auto parts store*
**(42 U.S.C. §12182(a))**

38.  Plaintiff incorporates by reference and realleges all the paragraphs above.

39.  42 U.S.C. § 12182(a) provides:

> *"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."*

40.  Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

41.  Congress also found that: "*individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities,* 42 U.S.C. § 12101(a)(5); "*the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-*

*sufficiency for such individuals*;" 42 U.S.C. § 12101(a)(7). Congress even found that: "*the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.*" 42 U.S.C. § 12101(a)(8).

42. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

43. The ADA provides, inter alia, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity" 42 U.S.C. § 12182(a)(i).

44. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(a)(ii).

45. To address this *broad* range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires

a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter *various forms of discrimination"* including not only barriers to physical access, but also other forms of exclusion and *relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.* 42 U.S.C. 12101(a)(5); see also H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

46. For that reason, the Act applies to any barrier that denies or diminishes disabled individuals' *full and equal enjoyment* of the privileges and *services* offered by the public accommodation. 42 U.S.C. 12182.

47. The keystone for analysis of full and equal enjoyment is Defendant *must start by considering how its facilities are used by non-disabled guests and then take reasonable steps to provide guests with disabilities with a like experience. Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005).

48. Plaintiff demands to be afforded the same level of service and treatment as that offered to non-disabled individuals, so as to be offered the same experience as those not disabled.

49. Plaintiff, John Smith, was denied full and equal access to the O'Reilly auto parts store. Plaintiff specifically and definitely wants to return to the Defendants' establishment to enjoy the high-quality products and services that it provides to its customers. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals and which Defendants have failed to provide to Plaintiff as follows: Defendants failed to provide an accessible route to and throughout the store shopping aisles for disabled individuals, which means that unlike the non-disabled, the disabled must struggle to move throughout the store and shopping aisles, if they can make it at all; Defendants failed to provide an accessible toilet room that is readily accessible to and usable by Plaintiff and other disabled individuals; Defendants failed to provide Plaintiff that same experience that non-disabled individuals have when shopping at O'Reilly; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in the auto parts store area, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface in the auto parts store area as a merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to provide the same experience by making it nearly impossible for the disabled to access the check-out counter in the store area, while the non-disabled can independently access the counter and services provided at the counter; Defendants' use of the accessible counter surface in the checkout area as a

merchandise sales table denies the disabled a counter surface to use, unlike the able-bodied, who have usable counter surfaces; Defendants failed to maintain the accessible signage of the O'Reilly auto parts store so that the disabled, unlike the non-disabled, do not even know what route and what paths of travel are usable by individuals with disabilities; Defendants' failure to identify by signage what is accessible and what is not accessible makes the disabled inferior, segregated or otherwise treated differently, because unlike the non-disabled, disabled individuals have to guess and speculate and determine by trial and error what facilities can even be used by them; and all the foregoing failures by Defendants inhibited Plaintiff from having the same experience that non-disabled individuals have when shopping at O'Reilly's.

50. Accordingly, Defendant's "use" of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated persons with disabilities from non-disabled individuals. "*The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected.*" *H.R. Rep. No. 101-485(III), at 50, 1990 U.S.C.C.A.N at 473.* The ADA provides a "broad mandate" to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream of American life. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675, 121 S.Ct.1879, 149 L.Ed.2d 904 (2001) (*quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332*).

51. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of the auto parts store.

52. Defendant's conduct and Defendant's unequal treatment of Plaintiff constitute continuous violations of the ADA and absent a Court ordered injunction Unlike people without disabilities, doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

53. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

54. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. He is entitled to have his reasonable attorney's fees, costs and expenses paid by the Defendant pursuant to 42 U.S.C. § 12205.

55. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

**WHEREFORE**, premises considered, John Smith, demands judgment against the Defendant on Counts One, Two, and Three, and requests the following injunctive and declaratory relief:

1. That the Court declare that the property owned and business operated by the Defendant as well as all Defendant's illegal actions described herein violate the Americans with Disabilities Act, as more particularly described above;

2. That the Court enter an order directing the Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

3. That the Court enter an order, in accordance with Count Two, directing the Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4. That the Court enter an order directing the Defendant to provide Plaintiff full and equal access both to the O'Reilly experience and to the use of the establishment, and further order Defendant to maintain the required accessible features at the facility so that Plaintiff and others similarly situated are offered the same experience that is offered to members of the general public without disabilities, as stated in Count Three. 42 U.S.C. § 12182(a).;

5. That the Court award reasonable attorney's fees, costs, (including expert fees) and other expenses of suit, to Plaintiff; and

6.     That the Court award such other, further, and different relief as it deems

necessary, just, and proper.


Respectfully Submitted, this 25th Day of September, 2018.


/s/

**Bradley D. McAdory**
MS BPR # 10545
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.521.3859 f
BDM@ADA-Firm.com
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned

Complaint for service of process by USPS mail or electronic mail, postage prepaid and

properly addressed this 25th day of September, 2018 to the following:


**O'REILLY AUTOMOTIVE STORES INC.**
c/o C T Corporation System
Attn.: Registered Agent
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

/s/ _____
      **Bradley D. McAdory**
      MS BPR # 10545
      ADA Group LLC
      4001 Carmichael Road, Suite 570
      Montgomery, Alabama 36106
      334.819.4030 p
      334.521.3859 f
      BDM@ADA-Firm.com
      *Attorney for the Plaintiff*